KAMER ZUCKER ABBOTT
Gregory J. Kamer        #0270
Edwin A. Keller, Jr.    #6013
R. Todd Creer           #10016
Kaitlin H. Paxton       #13625
3000 West Charleston Boulevard, Suite 3
Las Vegas, Nevada 89102-1990
Tel: (702) 259-8640
Fax: (702) 259-8646
gkamer@kzalaw.com
ekeller@kzalaw.com
tcreer@kzalaw.com
kpaxton@kzalaw.com

Attorneys for Defendants Riverside Resort
and Casino, Inc., The Donald J. Laughlin
Family Trusts, and Donald J. Laughlin

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT NORSOPH, Individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br>vs.<br><br>RIVERSIDE RESORT AND CASINO, INC., THE DONALD J. LAUGHLIN FAMILY TRUSTS and DONALD J. LAUGHLIN as the sole trustee and beneficiary of such trusts, and DONALD J. LAUGHLIN, Individually,<br><br>       Defendants. | Case No. 2:13-cv-00580-APG-GWF<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO LIFT STAY AND MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. § 216(B) AND FOR OTHER RELIEF** |

   Defendants Riverside Resort and Casino, Inc. ("the Riverside" or "the Company"), The Donald J. Laughlin Family Trusts, and Donald J. Laughlin (collectively referred to hereinafter as "Defendants"), by and through their counsel of record, the law firm of Kamer Zucker Abbott, hereby files its Response to Plaintiffs' Motion to Lift Stay and Motion for Circulation of Notice of the Pendency of this Action Pursuant to 29 U.S.C. § 216(b) and for Other Relief (ECF Nos. 57-58). This response is based upon the pleadings and papers on file herein, the attached memorandum of points

and authorities, and any argument this Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT.**

Plaintiff Robert Norsoph ("Plaintiff"), filed the instant Complaint on April 4, 2013. (ECF No. 1). Defendants filed their Answer to Plaintiff's Complaint on June 21, 2013. (ECF No. 13). On that same day, Plaintiff filed a Motion for Circulation of the Pendency of This Action Pursuant to 29 U.S.C. § 216(B) and for Other Relief. (ECF No. 14). Due to the similarities of two cases pending, first, in the Ninth Circuit Court and, then, the United States Supreme Court,[1] the parties stipulated to stay this case pending the outcome of those decisions. The parties continued to provide status reports to the Court regarding the progress of the two related cases and received extensions of the stay from the Court, with the most recent extension granted May 31, 2018 for an extension through September 28, 2018. (ECF No. 56). Subsequently, the Supreme Court denied certiorari on June 25, 2018 in the two related cases. See Wynn, U.S. Sup. Ct., No. 16-163 (Jun. 25, 2018); National Rest. Ass'n, U.S. Sup. Ct., No. 16-920 (Jun. 25, 2018).

In the present matter, Plaintiff alleges on his behalf, and on behalf of other similarly-situated table games dealers, violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"). Specifically, Plaintiff claims that dealers were required to participate in an unlawful tip pool because they had to share their tips with other employees who do not customarily and regularly receive tips. As a preliminary matter, this class should not be conditionally certified because there is no violation of the FLSA as alleged by Plaintiff. The regulations relied upon by Plaintiff have been invalidated by Congress and the Department of Labor. Further, as Plaintiff has not worked for the Riverside since 2012, he has not been subject to a tip pool under the FLSA amendment enacted in

---

[1] See Oregon Restaurant and Lodging, et al. v. Solis, et al., Case No. 3:12-cv-01261-MO (D. Ore.); Cesarz, et al. v. Wynn Las Vegas, LLC, et al., Case No. 2:13-cv-00109-RCJ-CWH (D. Nev.).

March 2018 and thus is an improper representative to any alleged violations if the claim survives past Defendants' forthcoming motion for judgment on the pleadings.

Moreover, if the class is conditionally certified, Plaintiff presents no unique circumstances to warrant a tolling of the statutes of limitations, and his request for a 120-day notice period is excessive, unreasonable, and contrary to the precedent of the courts of this District. Plaintiff also fails to present evidence as to why circulation of notice by first-class mail would be ineffective. Accordingly, Plaintiff's request for e-mail addresses, telephone numbers, and for posting and publication of the notice at the Riverside and in any employee "newsletter" is unwarranted here. Finally, the content of the proposed notice needs to be modified as requested *infra*.

**II.    FACTUAL BACKGROUND.**

Founded in 1964 by gaming pioneer Don Laughlin, the Riverside is the oldest family owned and operated hotel-casino in Laughlin, Nevada. The Riverside is the premier hotel and casino on the Colorado River and provides its guests with numerous gaming and entertainment amenities. Customer service is central to the Riverside's mission statement. It is Riverside's mission to provide its customers with unmatched service. The Table Games Department ("the Department") is an integral part of achieving Riverside's mission. In order to encourage quality service during all interactions with the guests, the Riverside mandates a tip pool within the Department and includes all classifications who provide direct service to the guest.

There is not much turnover at the Riverside. Between May 11, 2011 to the present, approximately 255 current and former table games dealers have worked for the Company. Moreover, the city is not very transient, with many former employees believed to be remaining in the immediate area. Thus, if the class is conditionally certified, a nationwide exhaustive search for putative class members will not be necessary.

III. **LEGAL ANALYSIS**.

    *A.    The Putative Class Should Not Be Conditionally Certified as the Alleged Violations of the FLSA Have Been Nullified by Congress.*

Plaintiff seeks to represent a class based on the contention that they were all subject to an illegal tip pool. However, the Department of Labor has acknowledged that the type of tip pool in question is not in violation of the FLSA. Defendants intend to file a motion for judgment on the pleadings setting forth the same but were waiting for the stay to be lifted. For purposes of this response though, Defendants offer the following summary of reasons Plaintiff does not represent a viable class of injured parties, and even if there is *arguendo* an appropriate class, he is not part of it.

In December 2017, the Department of Labor issued a notice of proposed rulemaking (NPRM) explaining that, "[a]fter considering the *ORLA*[2] rehearing dissent and the Tenth Circuit's decision in Marlow[ v. New Food Guy, Inc., 861 F.3d 1157 (10th Cir. 2017)], both of which state that the Department's 2011 Final Rule exceeded the agency's authority under section 3(m)," it was "seriously concerned that it incorrectly construed the [FLSA] in promulgating the tip credit regulations" in 2011. 82 Fed. Reg. at 57,395-96. Moreover, "[t]he Department [had] independent and serious concerns about those regulations as a policy matter," in that they prevented tip sharing among "restaurant cooks, dishwashers, and other traditionally lower-wage job classifications." Id. at 57,399. The Department announced that it would rescind "portions of its tip regulations . . . that impose restrictions on employers that pay a direct cash wage of at least the full federal minimum wage and do not seek to use" a tip credit. Id. at 57,395.

Three months later, on March 6, 2018, the Secretary of Labor testified before the House Appropriations Committee's Subcommittee on Labor, Health and Human Services, and Education. See U.S. Sup. Ct., Nat'l Rest. Ass'n, No. 16-920, U.S. Br. in Opp. at 11 (May 22, 2018). The Secretary

---

[2]Oregon Rest. and Lodging Ass'n v. Perez, 843 F.3d 355 (9th Cir. 2016).

testified that he "found persuasive" what "the Tenth Circuit had made clear in Marlow," "that the Department lacked statutory authority for its 2011 regulations at issue here." Id. Any regulation of the tip-pooling practices of employers who do not take a tip credit, the Secretary said, would require further legislation. Id.

In response to these developments, Congress amended the FLSA in March of this year. 2018 Appropriations Act, Div. S, § 1201(a) (29 U.S.C. § 203(m)(2)(B)). With the 2018 Appropriations Act, Congress gave the Department limited authority to regulate the tip-pooling practices of employers who do not take a tip credit. The Act amended Section 203(m) of the FLSA to prohibit certain kinds of tip pools, even if an employer pays tipped employees the full minimum wage. Specifically, the added language states that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 2018 Appropriations Act, Div. S, § 1201(a) (29 U.S.C. § 203(m)(2)(B)).

As the Department of Labor conceded to the Supreme Court, the fact that Congress created this new "express prohibition" demonstrates that the FLSA did not previously prohibit such tip pools in the absence of a tip credit. U.S. Sup. Ct., Nat. Rest. Ass'n, No. 16-920, U.S. Br. in Opp. at 25 (May 22, 2018). Indeed, Congress invalidated the 2011 regulations on which Plaintiffs rely by *permitting* tip pools that the 2011 regulations prohibited (*e.g.*, pools with non-supervisors), and also expressly barred *any* further reliance on the regulations by providing that "[t]he portions of the [2011] final rule" that are at issue in this case "shall have no further force or effect until any future action taken by the Administrator of the [Department's] Wage and Hour Division." 2018 Appropriations Act, Div. S § 1201(c).

The 2018 amendments also added a private right of action for recovery of tips, which the Department of Labor (under the current *and* previous administration) had conceded was not

previously available. "Any employer who violates" the new version of Section 203(m) "shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." 2018 Appropriations Act Div. S, § 1201(b). Until those amendments, the FLSA had authorized private suits *only* by workers seeking either "unpaid minimum wages" or "unpaid overtime compensation." 29 U.S.C. § 216(b) (2012).

Further, the Department of Labor has acknowledged that the FLSA amendments render the 2011 regulations at issue in this case null and void. Following the 2018 amendments, the Department of Labor lifted its earlier "non-enforcement policy concerning" the 2011 regulations, but stated that it will only enforce the *new* statutory restrictions on tip pools for the period March 23, 2018 onward. Dep't of Labor, Field Assistance Bulletin No. 2018-3, *available at* https://www.dol.gov/whd/FieldBulletins/fab2018_3.htm (Last visited July 21, 2018). It will not enforce the 2011 regulations, even for tip pools in place before March 2018. *See also* U.S. Sup. Ct., *Nat. Rest. Ass'n*, No. 16-920, U.S. Br. in Opp. at 25 (May 22, 2018) (acknowledging that the "no further force or effect" language in the statute means that the regulations at issue in the Wynn case are not operative). Thus, Plaintiff's allegations of FLSA violations have been made invalid and the putative class should not be conditionally certified.

Significantly, even if Plaintiff's counsel insists a class exists based on the new amendments, Plaintiff cannot represent that class. Plaintiff stopped working for the Riverside on May 19, 2012, so he has not been subject to Riverside's tip pool policy since the statutory amendment. Thus, he is not a proper representative for the putative class.

### B.   *Plaintiff's Request to Toll the Statutes of Limitations Must Be Denied.*

This District Court has stated the following with respect to tolling the statute of limitations of a collective action:

> Because all potential plaintiffs to Section 216(b) actions *must* file their consent to the suit to toll the statute of limitations, there is no time or resource saving concerns which would justify tolling the statute of limitations from the time the Complaint is filed in a § 216(b) action until some formal 'certification' decision is made. Indeed, doing so would violate the express terms of the statute that the actions does not commence with respect to each individual plaintiff until they file their consent.

Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1136-37 (D. Nev. 1999). Similarly, the Ninth Circuit Court has made it clear that equitable tolling may be appropriate in two situations: (1) when the plaintiffs are prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant; or (2) when extraordinary circumstances beyond plaintiffs' control make it impossible to file the claims on time. See Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996).

Here, there is no reason, in the present circumstances, for the Court to depart from the foregoing general rule. There is no allegation that the Riverside has engaged in wrongful conduct that prevented individuals from asserting their claims. Furthermore, Plaintiff fails to show any extraordinary circumstances that would prohibit individuals from filing their claims on time. See, *e.g.*, Thurmond v. Presidential Limousine, No. 2:15-cv-01066-MMD-PAL, 2015 WL 4937989, at *3 (D. Nev. Aug. 19, 2015) (denying equitable tolling where nothing in the record suggested any wrongdoing by defendants or anything that would prevent plaintiffs from timely filing claims). Furthermore, unlike in the case provided by Plaintiff, individuals in this matter have been provided ample additional time at this point to file their claims, as the case has been stayed since July 15, 2013 and tolling will continue until the stay expires on September 28, 2018, provided the stay is not lifted in advance.

While Plaintiff asks this Court to only toll the statute of limitations for the period of time that the Motion for Circulation is pending, this Court has denied similar requests for tolling during briefing, noting the clear statutory language regarding the running of the statute of limitations for individual plaintiffs in a collective action. See McDonagh v. Harrah's Las Vegas, Inc., No. 2:13-CV-1744 JCM-CWH, 2014 WL 2742874, at *5 (D. Nev. Jun. 17, 2014). As a result, the Riverside requests that this

Court deny Plaintiffs' request for equitable tolling outside of the tolling already agreed to due to the stay.

### C. *Plaintiff's Request For a 120-Day Notice Period is Excessive.*

If the Court decides to conditionally certify the class, Plaintiff's request to allow the Consent for Joinder forms to be filed for 120 days after the notification is mailed is excessive and unreasonable. Underlying every civil action is the need to construe and administer rules to secure the just, speedy, and inexpensive determination of every action and proceeding. See Fed. R. Civ. P. 1. Furthermore, the U.S. Supreme Court permits court authorization of notice because it "serves the legitimate goal of avoiding a multiplicity of duplicative suits and *setting cutoff dates to expedite disposition of the action*." See Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 172 (1989) [emphasis added].

This District Court has consistently upheld opt-in periods of sixty (60) days where the proposed class does not present extensive communication issues. See Padan v. W. Bus. Sols., LLC, No. 2:15-cv-00394-GMN-CWH, 2016 WL 304303, at *1 (D. Nev. Jan. 25, 2016) (Even where plaintiff asserted that "[t]he Class ... will include several thousand members," sixty days was a reasonable time frame.); Thurmond, 2015 WL 4937989, at *4 (granting sixty (60) day window for limousine drivers); Johnson v. Pink Spot Vapors, Inc., No. 2:14-cv-01960-JCM-GWF, 2015 WL 1413614, at *5 (D. Nev. Mar. 27, 2015) (allowing for sixty (60) day period, but noting a "shorter period could probably be justified"); Gamble v. Boyd Gaming Corp., No. 2:13-CV-1009-JCM-PAL, 2014 WL 2573899, at *5 (D. Nev. June 6, 2014) (denying request for 120-day window and granting one for sixty (60), which is "consistent with this district's precedent"); Williams v. Trendwest Resorts, Inc., No. CVS05-0605-RCJ-LRL, 2006 WL 3690686, at *7 (D. Nev. Dec. 7, 2006) (sixty (60) day period reasonable for class that included workers in Nevada and California).

Here, the largest potential pool of plaintiffs is approximately 255 current and former employees. Of this approximate number, more than half either still work for the Riverside or are

believed to still reside in the immediate area. Moreover, the potential plaintiffs are either current or former employees of a single property located in Laughlin, Nevada. In other words, unlike many other collective action FLSA lawsuits, there are not multiple properties nationwide that are implicated here. Accordingly, Plaintiff's unsupported speculation that it will take a great deal of time to locate employees who may have dispersed or not be able to reply to their mail is unwarranted.

Plaintiff cites to the case of Cranney v. Carriage Servs., Inc., in which the Court ordered the extensive 120-day period that Plaintiffs request here. See Cranney v. Carriage Servs., Inc., No. 2:07-cv-0158-RLH-PAL, 2008 WL 608639 (D. Nev. Feb. 29, 2008). Notably, however, that case is clearly distinguishable from the present matter. In Cranney, the Court likely ordered the extended notice period in that case because it involved employees who worked at approximately 170 funeral homes and 37 cemeteries scattered across 27 states. Id. Such facts are obviously not present in the current matter before the Court. Consequently, the Court should maintain this District's precedent and impose a deadline of sixty (60) days for opt-in plaintiffs to file their Consent to Joinder.

### D. *Plaintiff's Requests for Workplace Posting, E-Mail Distribution, and Newsletter Publishing of Notice is Inappropriate and the Court Should Ensure Protection of Any Contact Information Required to be Produced.*

If the class is conditionally certified, Defendants do not oppose Plaintiff's request for the names and last known addresses of current and former table games dealers who match the putative class description, but it does oppose the remainder of Plaintiff's request. The request for employees' e-mail addresses and telephone numbers is both overbroad and intrusive. See Schemkes v. Presidential Limousine, No. 2:09-cv-1100-GMN-PAL, 2011 WL 868182, at *4 (D. Nev. Mar. 10, 2011) (denying Plaintiffs' request for phone numbers). In 2011, the Schemkes Court ordered the defendant to provide e-mail addresses based on unique factual issues not present here. In particular, the Court explained that the case dated back to *2006*, and, given the housing crisis' dramatic impact on Las Vegas, it was likely that many potential claimants would no longer reside at the residential addresses maintained by

the defendant. Id. ("Therefore, the Court finds that distribution of notice via e-mail address is appropriate *in this particular case* due to the long length of time the alleged conduct dates back and the current unique housing situation.") [emphasis added].

The present case does not involve an unstable housing market or a particularly transient area. Moreover, to the extent employees have provided the Riverside with their private e-mail addresses, those employees likely did so to facilitate communication between their employer and themselves – not so that the Company could furnish their private e-mail addresses to a third-party. E-mail notice also raises a variety of problems including the possibility that the notice will be forwarded to people outside the intended audience with possibly distorted commentary. See Reab v. Elec. Arts, Inc., 214 F.R.D. 623, 630-31 (D. Colo. 2002). Regarding telephone numbers, the same concerns about invasion of privacy and distorted messages apply. See, *e.g.*, Stickle v. SCI Western Market Support Center, L.P., 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009) (supplying the phone numbers of current and former employees appeared to be an unwarranted intrusion into the privacy of those individuals); Parks v. Eastwood Ins. Services, Inc., No. SA CV 02–507 GLT (MLGx), 2002 WL 34370244, at *5 (C.D. Cal. July 29, 2002) (warning that production of telephone numbers presents a greater risk of improper solicitation). Accordingly, Defendants assert that first class mail of the notice will ensure the integrity that the intended audience receives the judicially-controlled communication.

Moreover, it is entirely inappropriate to place upon Defendants the burden of posting the requested notice on the Riverside's premises for a period of 120 days and e-mailing the notice to its current and former table games dealers who match the putative class description. Forcing the Riverside to e-mail the notice to its own employees may confuse the employees into believing that the Riverside is sponsoring or approving of the notice where Defendants steadfastly deny any wrongdoing. Moreover, some district courts in Nevada have refused to order posting of the notice. See, *e.g.,* Phelps v. MC Communications, No. 2:11–CV–00423–PMP–LRL, 2011 WL 3298414, at *6 (D. Nev. Aug. 1,

2011) (refusing to order posting). The Court in Phelps reasoned that there was no indication that service by first-class mail would be ineffective or inadequate. Id. The same holds true here. Furthermore, if first-class mail is utilized in this case, Plaintiffs should bear the cost of mailing the notice. See Davis, 2009 WL 102735, at *13.

Similarly, publishing the notice in the next three (3) issues of an employee newsletter, if any, is wholly inappropriate. At the very least, any Riverside publication that could plausibly match the requested publication is distributed company-wide and are not limited to the employees that would purportedly be included in a class here. The purpose of requiring the Riverside to publish the notice in a company-wide publication can only serve to try to cast an unfavorable light on the Riverside where there has been no determination of any wrongdoing.

Finally, to the extent that the Court requires Defendant to furnish contact information for current and former table games dealers to facilitate notice, the Court should take the necessary precautions to protect the important privacy rights of such individuals. Indeed, courts recognize that individuals have privacy interests in such information as their telephone numbers and home addresses. See, *e.g.*, Roberts v. Amiercable Int'l., Inc., 883 F. Supp. 499, 506 (E.D. Cal. 1995) (noting that the "federal Constitution implicitly recognizes a right to privacy that requires a balancing test to be utilized whenever discovery requests intrude on the privacy interests of a party or non-party"). To that end, the Court should enter an appropriate protective order to ensure the confidentiality of potential opt-in plaintiffs by limiting the use of such information for purposes of this litigation only. Any disclosure of such information should be made to Plaintiff's attorneys only (not Plaintiff himself), with a prohibition against further disclosure by Plaintiff's attorneys to any other third party, individual plaintiff, or opt-in plaintiff.

### D. *Plaintiff's Proposed Notice is Insufficient and Must Be Modified.*

Plaintiff's Motion for Circulation attaches as Exhibit B a proposed notice which is insufficient

and requires modification. First, Plaintiffs' proposed notice fails to explicitly advise putative class members of what the risks and obligations of joining the case entail. The notice should include an advisement as to "any fees or advances a plaintiff would be obligated to pay at any stage of the litigation." See Krueger v. N.Y. Tel. Co., Nos. 93 Civ. 0178 and 1079, 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993). Plaintiff's proposed notice merely states that by signing and returning the "Consent to Join" form, the individual agrees to "enter into an agreement with plaintiffs' counsel concerning attorneys' fees and costs." The notice does not clearly state that by joining the lawsuit, an opt-in plaintiff may be liable for costs if plaintiffs do not prevail; it instead only focuses on the contingency of fees to plaintiffs' attorneys. Fairness and equity dictate that potential opt-in plaintiffs should be apprised of such matters so that they may make an informed decision as to whether to join the lawsuit with Plaintiff and Plaintiff's counsel as their representative. See Labrie v. UPS Supply Chain Solutions, Inc., No. C08-3182 PJH, 2009 WL 723599, *8 (N.D. Cal. Mar. 18, 2009) ("'The Effect of Joining this Lawsuit' section does not include a statement explaining that potential plaintiffs may share in liability for payment of costs if SCS prevails in this action, this language should be included in the notice. This information should be included to provide potential plaintiffs a 'fair statement of their rights.'"); Stanfield v. First NLC Fin. Services, LLC, No. C 06-3892 SBA, 2006 WL 3531729, at *2 (N.D. Cal. Dec. 5, 2006) ("the Court orders that the Notice include the sentence as follows: 'Should the lawsuit not succeed, however, any person who joined the lawsuit may be collectively and/or proportionately liable to reimburse First NLC for its costs of suit, such as filing fees or deposition transcripts.'").

     Plaintiff's proposed notice also inappropriately fails to inform putative class members of the likelihood that they will be obligated to participate in discovery or testify at trial. See Bishop v. AT & T Corp., 256 F.R.D. 503, 509 (W.D. Pa. 2009) ("the notice must be amended to inform prospective members regarding the prospect of providing deposition and/or court testimony."); Russell v. Illinois

Bell Tel. Co., 575 F. Supp. 2d 930, 939 (N.D. Ill. 2008) (The Court finds reasonable Illinois Bell's proposed language: 'While the suit is proceeding, you may be required to provide information, sit for depositions, and testify in court.'"); Lee v. ABC Carpet & Home, No. 00 CIV. 0984 (DAB), 2008 WL 2073932, at *2-3 (S.D.N.Y. May 9, 2008) ("[T]he Court finds that potential litigants should be advised of the possibility that class members may be required to sit for trial or be deposed."); Bontempo v. Westwood One Broadcasting Services, Inc., No. 01 C 8969, 2002 WL 1925911, at *4 (N.D. Ill. May 3, 2002) (ordering notice with language: "While this suit is proceeding, you may be required to respond to written questions, sit for depositions, testify in court, or any combination of those things."); Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 379 (N.D.N.Y. 1995) (ordering notice with language: "While the suit is proceeding, you may be required to provide information, sit for depositions and testify in court.").

Finally, the section entitled "Your Immigration Status Does Not Matter In This Case" is unclear and inaccurate in that it states, "You are entitled to be paid overtime wages and minimum wages under the Fair Labor Standards Act even if you are not otherwise legally entitled to work in the United States." While courts have recognized that an undocumented individual may be entitled to *past* unpaid wages for work actually performed, federal law prohibits the employment or continued employment of undocumented individuals and would not allow such persons to continue working to earn minimum wage or overtime wages. See 8 U.S.C. § 1324a; see also Hoffman Plastics, Inc. v. National Labor Relations Board, 535 U.S. 137 (2002). Accordingly, any employee who has misrepresented his authorization to work in the United States and is not legally authorized to work in the United States may be entitled to the alleged past unpaid wages for work performed, but may not continue working for the Company once the Company has actual or constructive knowledge of that employee's unauthorized status.

## IV. CONCLUSION.

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's Motion for Circulation of Notice of the Pendency of This Action Pursuant to 29 U.S.C. § 216(b) and for Other Relief. In the alternative, Defendants respectfully request that Plaintiff's proposed notice be amended as requested herein to ensure accuracy and fairness to both parties and that Plaintiff's request. Specifically, Defendants request that distribution of the notice be limited to first-class mail, that request for employee e-mail addresses, telephone numbers, and posting and publication of the notice at the Riverside and in any newsletter be denied, that the notice provide the appropriate disclosures regarding potential fees and costs, possible discovery and trial obligations, and an accurate statement regarding the effect of an individuals immigration, that the request to toll the statute of limitations in this case be denied, and that the notice period be limited to sixty (60) days.

DATED this 22nd day of August, 2018.

Respectfully submitted,

KAMER ZUCKER ABBOTT

By: /s/ R. Todd Creer
Gregory J. Kamer     #0270
Edwin A. Keller, Jr. #6013
R. Todd Creer        #10016
Kaitlin H. Paxton    #13625
3000 West Charleston Boulevard, Suite 3
Las Vegas, Nevada 89102
Tel: (702) 259-8640
Fax: (702) 259-8646

Attorneys for Defendants Riverside Resort and Casino, Inc., The Donald J. Laughlin Family Trusts, and Donald J. Laughlin

# CERTIFICATE OF SERVICE

This is to certify that on the 22nd day of August, 2018, the undersigned, an employee of Kamer Zucker Abbott, served a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO LIFT STAY AND MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. § 216(B) AND FOR OTHER RELIEF** through the Electronic Case Filing system of the United States District Court, District of Nevada to:

Leon Greenberg, Esq.
Dana Sniegocki, Esq.
Leon Greenberg Professional Corporation
2965 South Jones Boulevard, Suite #E-3
Las Vegas, Nevada 89146

Mark R. Thierman, Esq.
Thierman Law Firm
7287 Lakeside Drive
Reno, Nevada 89511

James P. Kemp, Esq.
Kemp & Kemp, Attorneys at Law
7435 West Azure Drive, Suite 110
Las Vegas, Nevada 89130

By: /s/ R. Todd Creer
An employee of Kamer Zucker Abbott